UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL RUSSO, an individual, | Case No. 2:21-cv-01403-ART-DJA |
| Plaintiff, | ORDER |
| v. | |
| DURACELL INC., a Foreign Entity; SENNHEISERT ELECTRIC CORP., a Foreign Entity; DOES 1 through 20; ROE BUSINESS ENTITIES 1 through 20, inclusive, | |
| Defendants. | |

Plaintiff Michael Russo ("Russo") brings the following action against Defendants Duracell Inc. ("Duracell") and Sennheiser Electric Corp. ("Sennheiser") for injuries he allegedly suffered from using batteries and wireless headphones manufactured by Defendants. Plaintiff brings claims for strict product liability, negligence, breach of express warranties, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose. Before the Court is Duracell's Motion for Partial Summary Judgment (ECF No. 47) which moves for partial summary judgment on Plaintiff's strict product liability claim and his prayer for punitive damages. Sennheiser timely joined the Motion for Partial Summary Judgment. (ECF No. 51.)

## I.   BACKGROUND

On April 21, 2019, Plaintiff was wearing wireless headphones while playing an online video game. (ECF No. 1-1 at ¶ 13.) Sennheiser manufactured the headphones and Duracell manufactured the two Quantum AAA batteries Plaintiff used to power the headphones. (*Id.* at ¶¶ 14, 17.) After playing for several minutes, Plaintiff heard a loud pop in his left ear "equivalent to a gun shot." (*Id.* at ¶ 20.) Plaintiff screamed in pain, knocked off the headphones, and

"immediately experienced loud ringing deep in his ear and couldn't hear anything from his left ear." (*Id.* at ¶¶ 21-22.) Plaintiff cleaned liquid coming from the battery from his ear and "saw smoke coming from the left battery compartment of the headphones." (*Id.* at ¶ 23.) Plaintiff observed that the battery inserted on the left side of the headphones had burst. (*Id.* at ¶ 24.)

Plaintiff claims that he has continued to suffer from "severe and permanent damage, including migraines, headaches, severe tinnitus, partial and substantial hearing loss in his left ear, and serious psychological and emotional damage, such as depression, anxiety, and fear, among others." (*Id.* at ¶ 25.) In his complaint, Plaintiff alleges, *inter alia*, that both Defendants are strictly liable because of defects in the design, manufacture, and warnings, among other issues, that were the direct and proximate cause of his injuries. (*Id.* at ¶¶ 27-29.)

On November 5, 2020, all parties and their experts conducted a joint inspection of the headphones and batteries. (ECF No. 47-2 at 4.) Based on this joint inspection, Plaintiff's expert, Kenneth Kutchek ("Kutchek"), noted in his report that the Sennheiser Quick Guide instructed users to install AAA rechargeable NiMH batteries and did not mention the use of standard non-rechargeable alkaline batteries. (*Id.* at 11.) The Sennheiser Safety Guide mentioned both rechargeable and standard batteries but stated that standard batteries should not be charged. (*Id.* at 12.) An additional label on the left ear cup beside the battery compartments warned against recharging standard alkaline batteries. (*Id.*) The Duracell battery packaging and website also stated that non-rechargeable batteries should not be charged and that doing so may cause the battery cells to leak, overheat, rupture, or explode. (*Id.* at 13.) Kutchek concluded that "[t]he cause of the ruptured/exploded headphones batteries is unknown at this time. Possible causes include 1) an electrical short in the headphones, 2) the headphones (with non-rechargeable AAA batteries) were placed on the cradle/charging stand and charged, and 3) defective AAA battery." (*Id.* at 15.)

1   Kutchek never authored any further reports and Plaintiff failed to offer Kutchek
2   for his deposition. (ECF No. 47-4 at 2.)

3       Defendants' expert, Guy Trozzi, later concluded in his report, based on
4   comparing the subject headphones and base to a new sample, that the subject
5   headphones "likely...functioned as intended (as designed) at the time of the
6   incident." (ECF No. 47-3 at 8.) He further noted that, because the headphones
7   "lack[ed] physical or electrical charge prevention of alkaline batteries...at
8   minimum, all warnings should have been consistent and clear that standard
9   alkaline batteries should never be used, which is not the case." (*Id.* at 11.) Lastly,
10  he stated that "due to its rudimentary charge circuitry, the [headphones] will
11  charge any AAA size battery type, independent of battery discharged state...and
12  can result in undesirable effects if used with alkaline batteries." (*Id.*)

13      **II.    LEGAL STANDARD**

14          The purpose of summary judgment is to avoid unnecessary trials when
15  there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S.*
16  *Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is
17  appropriate when the pleadings, the discovery and disclosure materials on file,
18  and any affidavits "show that there is no genuine issue as to any material fact
19  and that the moving party is entitled to a judgment as a matter of law." *Celotex*
20  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a
21  sufficient evidentiary basis on which a reasonable fact-finder could find for the
22  nonmoving party and a dispute is "material" if it could affect the outcome of the
23  suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
24  (1986). The moving party bears the burden of showing that there are no genuine
25  issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.
26  1982). If the moving party satisfies Rule 56's requirements, the burden shifts to
27  the party resisting the motion to "set forth specific facts showing that there is a
28  genuine issue for trial." *Anderson*, 477 U.S. at 256.

1

2

### III.   DISCUSSION

#### a.  Prayer for Punitive Damages

At the May 17, 2024 hearing, Plaintiff stated that they did not oppose summary judgment on its prayer for punitive damages. Finding good cause, the Court will grant summary judgment on the prayer for punitive damages.

#### b.  Strict Product Liability Claim

The Court will deny summary judgment on the strict product liability claim because Plaintiff was not required to provide expert testimony in support of his claim. For a claim alleging strict liability for a defective product, the plaintiff must prove that the product was defective, that the defect existed at the time the product left the manufacturer, and that the product caused plaintiff's injuries. *Ford Motor Co. v. Trejo*, 402 P.3d 649, 653 (Nev. 2017).

In *Ford Motor Co.*, the Nevada Supreme Court reaffirmed that Nevada follows the consumer-expectation test and declined to adopt the risk-utility approach discussed in the Restatement (Third) of Torts. *Id.* at 655-57. Under the consumer-expectation test, "a product is defectively designed if it 'fail[s] to perform in the manner reasonably to be expected in light of its nature and intended function and [is] more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community.'" *Id.* at 650 (quoting *Ginnis v. Mapes Hotel Corp.*, 470 P.2d 135, 138 (1970)). In contrast, the risk-utility approach requires "plaintiffs to demonstrate proof of a reasonable alternative design." *Id.* at 656. The Nevada Supreme Court explained that one reason for retaining the consumer-expectation test was that this requirement to provide a reasonable alternative design "would require plaintiffs to retain an expert witness even in cases in which lay jurors can infer a design defect from circumstantial evidence." *Id.* (quoting *Potter v. Chi. Pneumatic Tool Co.*, 694 A.2d 1319, 1332 (Conn. 1997)).

Under the consumer-expectation test, plaintiffs may not need to provide expert

testimony to prove the existence of a defect. In discussing an exception to the expert testimony requirement, the Nevada Supreme Court explained that plaintiffs may fulfill their evidentiary burden in some circumstances by providing circumstantial evidence of a defect without direct proof of the cause of the malfunction. *Stackiewicz v. Nissan Motor Corp.*, 686 P.2d 925, 929 (Nev. 1984). In *Stackiewicz*, the Nevada Supreme Court upheld the jury's verdict and found that plaintiff provided sufficient circumstantial evidence that a defect in their steering wheel caused them to lose control of the vehicle, even without direct proof of the mechanical cause of the malfunction, based on testimony from plaintiff and passengers in the car, in addition to expert testimony that the steering wheel locking caused the accident. *Id.* at 930.

The Nevada Supreme Court reaffirmed this exception in *Krause Inc. v. Little*, 34 P.3d 566 (Nev. 2001). In *Krause, Inc.*, the Nevada Supreme Court cited *Stackiewicz* for the idea that when there is "evidence of an unexpected, dangerous malfunction...direct proof of the malfunction's cause is unnecessary; the circumstantial evidence of the malfunction can prove a manufacturing defect." *Krause Inc.*, 34 P.3d at 571-72. The Court then found plaintiff's testimony that a ladder collapsed when they stood on it sufficient to show that the ladder was defective without any expert testimony because "[t]he average juror is quite familiar with a ladder's functions, and does not require expert testimony to know that a ladder should not collapse while a person stands on it." *Id.* at 572.

The Ninth Circuit has also recognized the expert testimony exception. In *Feagins v. Trump Org.*, 624 Fed. Appx. 967 (Mem.) (9th Cir. 2015), the Ninth Circuit reversed the district court's holding that the products liability claim required expert testimony because "[w]here there are no alternative explanations for a malfunction, Nevada law requires only evidence of an unexpected and dangerous malfunction to establish a defect." *Feagins*, 624 Fed. Appx. at 967 (citing *Stackiewicz*, 686 P.2d at 298).

The present case fits within the exception to the expert testimony requirement. Here, Plaintiff was injured when the batteries in his headphones burst. (ECF No. 1-1 at ¶¶ 20-24.) Such an explosion is clearly "an unexpected and dangerous malfunction [sufficient enough] to establish a defect." *Stackiewicz*, 686 P.2d at 298. The products at issue "fail[ed] to perform in the manner reasonably to be expected in light of its nature and intended function and [were] more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community." *Ford Motor Co.*, 402 P.3d at 650 (quoting *Ginnis*, 470 P.2d at 138). One does not need to understand the mechanics behind how the headphones and batteries operate to conclude that the batteries should not have exploded and that such a risk is more dangerous than an average person would expect. Thus, Plaintiff was not required to provide expert testimony.

Defendants cannot avoid liability at this stage by merely offering an alternative explanation for the explosion without supporting evidence. "[A]n inference of liability is proper under *Stackiewicz* only when there is *no other identifiable cause* for the malfunction." *Michelin North America, Inc. v. Deal*, 381 P.3d 641 (Table) (Nev. 2012) (citing *id.* at 928) (emphasis in original). This inference does not apply if a party "introduce[s] evidence showing *alternative explanation*s of a malfunction." *Id.* (emphasis in original). "[A defendant [must introduce] evidence showing another *identifiable* cause for the malfunction, not just mere *potential* for another cause of the action." *Smith v. Wolf Performance Ammunition*, No. 2:13-cv-2223 JCM-NJK, 2015 WL 259063, at *8 (D. Nev. May 18, 2015).

For instance, in *Michelin*, the *Stackiewicz* exception did not apply because plaintiff had provided evidence that the tires were punctured, improperly repaired, suffered impact, and were underinflated, "all of which were potentially identifiable causes of the separated tire." *Michelin*, 391 P.3d at 641. In contrast, in *Smith*, the court concluded that defendants had failed to negate Plaintiff's product defect claim because the defendant "present[ed] no evidence that plaintiff

did in fact misuse the firearm or ammunition, and its expert [could not] state conclusively that the cause of the incident was not 'attributable to manufacturing characteristics.'" *Smith*, 2015 WL 259063, at *8. Similarly, in this case, Defendants rely on the fact that Plaintiff's expert concluded that Plaintiff possibly misused the products by charging non-chargeable batteries, but the expert only identified this as one potential cause. (ECF Nos. 47 at 6; 47-2 at 15.) While Defendants allege that Plaintiff has not negated this potential alternate cause of the accident (ECF No. 47 at 6), Plaintiff was not required to do so at this stage. Because Defendants failed to provide evidence in support of its alternative theory of cause, plaintiffs can proceed with their strict product liability claim.

## IV.   CONCLUSION

It is therefore ordered that Defendants' Motion for Partial Summary Judgment (ECF No. 47) is granted in part and denied in part. The Court grants summary judgment as to the prayer for punitive damages but denies summary judgment for the strict product liability claim.

DATED THIS 28th day of June 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE